UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RENEE JEAN B.,

                                          Plaintiff,        5:18-CV-0036
                                                                  (CFH)

    v.

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                                          Defendant.
_____

**APPEARANCES:**                           **OF COUNSEL:**

Olinsky Law Group                    HOWARD D. OLINSKY, ESQ.
300 S. State Street, Ste. 420
Syracuse, New York 13202
Attorneys for plaintiff

Social Security Administration        HEETANO SHAMSOONDAR, ESQ.
Office of Regional General Counsel,
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorneys for defendant

## MEMORANDUM-DECISION & ORDER[1]

Plaintiff Renee Jean B.[2] brings this action pursuant to 42 U.S.C. § 405(g)

seeking review of a decision by the Commissioner of Social Security ("Commissioner"

---

[1] Parties consented to review of this matter by a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. See Dkt. No. 6.

[2] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision & Order will identify the plaintiff by her first name and last initial.

or "defendant") denying her applications for supplemental security income benefits ("SSI") and disability insurance benefits. Dkt. No. 1 ("Compl."). Plaintiff moves for a finding of disability, and the Commissioner cross moves for judgment on the pleadings. Dkt. Nos. 11, 14. For the following reasons, the determination of the Commissioner is reversed, plaintiff's motion for judgment on the pleadings is granted, and the matter is remanded for proceedings consistent with this Memorandum-Decision & Order.

## I. Background

On November 14, 2014, plaintiff filed a Title II application for a period of disability and disability insurance benefits and protectively filed a Title XVI application for supplemental security income. Plaintiff alleged disability beginning on August 16, 2010. The claim was denied initially on January 12, 2015. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held before ALJ Elizabeth W. Koennecke on January 31, 2017, with a supplemental hearing held on May 15, 2017, for the purpose of obtaining vocational expert testimony. Plaintiff's timely request for review by the Appeals Council was denied, making the ALJ's findings the final determination of the Commissioner. Plaintiff commenced this action on January 9, 2018. Dkt. No. 1 ("Compl.").

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not

2

determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would *have to conclude* otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). However, if the correct legal standards were applied and the ALJ's finding is supported by supported by substantial evidence, such finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted); Venio v. Barnhart,

3

213 F.3d 578, 586 (2d Cir. 2002).

## B.  Determination of Disability[3]

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  Id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. §

---

[3] Although the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are identical, so that "decisions under these sections are cited interchangeably."  Donato v. Sec'y of Health and Human Services, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

4

404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan ,134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y.

5

2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. See Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). The Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

### C. ALJ Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since August 16, 2010, the alleged onset date, to December 31, 2015, her date last insured. T at 13. The ALJ found at step two that plaintiff had the severe impairment of complex regional pain syndrome of the right, dominant upper extremity. Id. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 15. Before reaching step four, the ALJ concluded that

"claimant had the residual functional capacity to perform one handed work with the non-dominant arm/hand except she can use the dominant hand for carrying pieces of paper and assisting lifting and carrying of less than 1 pound." Id. at 15. At step four, the ALJ determined that plaintiff was unable to perform past relevant work. Id. at 19. Considering plaintiff's RFC, age, education, and work experience, together with the Medical-Vocational Guidelines, the ALJ further concluded that there are jobs that exist in significant numbers in the national economy that plaintiff could perform. Id. at 20. The ALJ obtained testimony from a vocational expert who testified that plaintiff would be able to perform the jobs of telemarketer, usher,[4] and information clerk. Id. The VE testified that job numbers for all three positions "would be eroded by 50%" due to hand-related limitations. Id. The ALJ concluded there are jobs that exist with significant numbers in the national economy that plaintiff could perform. Id. at 20-21. Thus, the ALJ determined that plaintiff has not been under a disability within the meaning of the Social Security Act from the alleged onset date to the date of the decision. Id. at 21.

## D. Arguments

---

[4] The ALJ stated further, "[n]either the vocational expert nor Representative Schmidt mentioned that the job of usher is light and so could not be performed at a sedentary level. In any event, the undersigned gives no weight to this hypothetical with sedentary work and occasional neck movement . . . . [E]ven if Representative Schmidt's hypothetical is granted, it does not establish disability because there are still two jobs with significant numbers existing in the national economy that remain." T at 20-21. The ALJ also noted that plaintiff's representative "questioned the vocational expert in a general manner about being off task and how many days of missing work are acceptable. She did not cite any specific evidence to support the presence of these limitations in this case. And, in fact, there is no evidence showing the claimant had problems with attention or focus, had medication side effects that would support these limitations or had acute exacerbations of discomfort that would result in missing work. This general questioning of the vocational expert was abstract and did not add any specifics to a theory of the case. The cross-examination of the vocational expert did not undermine his testimony or call any specific into question." Id. at 21.

7

Plaintiff argues that the RFC is not supported by substantial evidence because the record did not contain any medical opinion providing a function-by-function assessment of plaintiff's physical abilities; thus, the ALJ relied on her lay opinion in reaching the RFC. Dkt. No. 11 at 12. Further, plaintiff contends that the ALJ insofar as she afforded great weight to portions of the opinion of treating physician Dr. Marie Desravines, but failed to reconcile conflicts between her RFC and Dr. Desravines' opinion. Id. at 16-18. Defendant counters, arguing that the RFC is supported by substantial evidence because the ALJ was not required to have a medical opinion that provides a function-by-function assessment because she "had before her sufficient evidence to reach a determination as to Plaintiff's claim for benefits." Dkt. No. 15 at 8. Next, defendant argues that the ALJ properly assessed Dr. Desravines' medical opinion because the portion of her opinion that the ALJ rejected – her commentary regarding a potential future injury to the left upper extremity – was speculative. Id. at 10.

### E. Analysis

#### 1. Function-by-Function Assessment

The ALJ determined that plaintiff could perform one-handed work with the non-dominant arm and hand, but could use her dominant hand for carrying pieces of paper and assisting with lifting and carrying of items weighing less than one pound. T at 15. Plaintiff contends that the ALJ reached this RFC without a medical opinion in the record, as (1) she was not able to rely on the worker's compensation assessments, which she rejected; (2) there was no other medical evidence in the record providing a

8

function-by-function analysis; and (3) plaintiff's condition was not "minor" such that the record was sufficient for the ALJ to assess plaintiff's functional limitations. Dkt. No. 11 at 12-14. Further, plaintiff contends that the ALJ erred in limiting the RFC's "scope to simply address Plaintiff's right upper extremity, without considering any other functional limitations that possibly stem from her right upper extremity." Id. at 14, 16.

"To determine RFC, the ALJ must make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity." Bennett v. Astrue, No. 1:06-CV-0649, 2009 WL 1035106, at *13 (N.D.N.Y. Apr. 17, 2009) (citing 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a)). The Second Circuit has held that the failure to explicitly provide a function-by-function analysis as part of the RFC assessment does not amount to per se error requiring remand. Chichocki v. Astrue, 729 F.3d 172, 174 (2d Cir. 2013). Remand is required only where there is not sufficient medical information on which the ALJ could rely to assess the claimant's RFC. Id. ("Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed.") (citation omitted).

The ALJ reviewed in detail treatment notes from plaintiff's treating orthopedist,

9

Dr. William Short, from 2010, 2012, and 2013, noting that they demonstrated "fairly benign" findings – full flexion and extension of fingers, full ranges of motion in the right wrist, no atrophy, normal two point discrimination, no temperature change, and grossly normal motor functioning, and diagnoses of flexor strain and then chronic sprain in the right wrist. T at 16-17. The ALJ also notes that in 2014, "clinical examinations commenced documenting more significant findings[,]" including "hypersensitivity, reduced ranges of motion of the wrist and fingers, reduced grip and arm strength . . . ." Id. These 2014 treatment notes, as the ALJ admits, suggest a worsening of plaintiff's condition, yet these records do not provide or explain a level of functioning in her upper right extremity. Id. Thus, it is not clear on what medical evidence the ALJ relied in reaching the RFC as it relates to plaintiff's use – or lack thereof – of her dominant right upper extremity. The ALJ does reference plaintiff's Activities of Daily Living questionnaire, and notes that it reflects that plaintiff "had some difficulty with tasks, such as peeling a potato and carrying heavy grocery items"; yet, this self-reported, non-medical evidence does not suggest a specific level of ability in the right upper extremity such that the ALJ could determine that plaintiff could use the extremity in the manner specified in the RFC. Id. at 18.

Further obfuscating the analysis is the fact that the ALJ assigns "no weight" to the worker's compensation evaluations "because Social Security disability is based on a different standard and because the Workers' Compensation evaluations are temporary and apply only to short periods of time." T at 18. Some of these Workers' Compensation records assess plaintiff's ability to perform employment with the non-

10

dominant hand, and the ALJ did review these records in detail, leaving the Court unsure whether the ALJ did accord some degree of weight to these records in reaching her RFC. T at 18.[5]

Although the ALJ's RFC limits plaintiff largely to one-handed work, and the record supports the conclusion that plaintiff had full functional use of her left hand prior to the date last insured, the Court cannot determine that the RFC is supported by substantial evidence because it does not have an adequate basis on which to review the ALJ's conclusion that plaintiff could use her right hand for carrying papers, and assisting with lifting and carrying items of up to one pound. T at 15. That the ALJ's RFC involves very minimal use of the dominant right hand does not necessarily cure this Court's concern. This is because the Court cannot determine whether plaintiff would be able to perform the RFC and jobs proposed if she did not, before the date of last insured, have the ability to use her right hand to *any* degree. As discussed, the ALJ references medical records indicating that the condition and/or pain associated with plaintiff's upper right extremity worsened in 2014, but it is unclear which of the medical records, if any, the ALJ relied on reaching her conclusion about the functional use of the right hand from 2014 until December 31, 2015, the date last insured. Id. at 18. Accordingly, remand is required for the Commissioner to obtain from a medical source a function-by-function assessment *specific to plaintiff's right upper extremity*, and/or provide a functional assessment of plaintiff's upper right extremity which explicitly

---

[5] The Court is not concluding that any reliance on the Worker's Compensation records would amount to per se reversible error, merely that it is unclear which records informed the ALJ's assessment of the right upper extremity, especially from 2014 to the date last insured.

11

references the competent medical evidence on which the Commissioner relies in making this assessment, such that the Court is able to assess whether plaintiff could perform the functions set forth in the ALJ's RFC with respect to her right upper extremity. Once this assessment is reached,[6] the Commissioner may seek vocational expert testimony if necessary.

Insofar as plaintiff suggests that the ALJ erred by failing to assess "any other functional limitations that may possibly stem from her right upper extremity," Dkt. No. 11 at 14, 16, because substantial evidence supports the conclusion that there existed no other functional limitations "stemming" from the upper right extremity, remand is not required on this ground. It appears that the "other functional limitations" to which plaintiff refers is neck pain leading to headaches, "severe sleep problems," and "pain in the back of her shoulder blade" that "radiated in her neck." Dkt. No. 11 at 14. However, the ALJ did review many of these complaints, such as her complaints of neck pain and limitations with movement of her neck, and her concerns about potential future left hand problems. T at 17. The ALJ concluded that the record "documents infrequent and very intermittent reports of neck discomfort and few, if any, positive clinical findings." Id. The ALJ observed that one record from plaintiff's primary care provider found a "supple neck," but noted that "neither the claimant's orthopedist or pain clinic describe range of motion limitation or other neck abnormalities in treatment

---

[6] For example, if the Commissioner determines on remand that plaintiff could perform *no* work with the right dominant hand, VE testimony may be necessary to determine whether jobs exist in significant numbers in the national economy that plaintiff could perform without any use of the right upper extremity.

12

notes." Id. The ALJ also noted that there was "no documented work up for neck discomfort such as x-rays or a cervical spine MRI and EMG/NC testing from prior to the date last insured rules out cervical radiculopathy or myelopathy." Id. Although the ALJ does not explicitly address plaintiff's reported sleep difficulties, she does note that there were no reported medication side effects and that plaintiff was reported to be in no acute distress at several of her medical appointments prior to the date last insured. Id. at 18.

The Court finds no ground for remand as it relates to plaintiff's argument that the ALJ failed to consider any other functional limitations that may result from her right upper extremity issues. The ALJ reviewed the medical record and reasonably found that there did not exist medical support for plaintiff's claims of other limitations. See generally Rosado, 805 F. Supp. at 153 (S.D.N.Y. 1992). However, as the Court finds that there was not sufficient medical evidence from which the ALJ could reach an assessment of plaintiff's functioning of her upper right extremity to support that portion of her RFC, on remand, the Commissioner is to consider whether there existed, prior to the date last insured, any additional functional limitations stemming from plaintiff's upper right extremity and the impact of these functional limitations, if any.

## 2. Treating Physician Rule

Plaintiff appears to argue that the ALJ violated the treating physician rule because she afforded the opinion of plaintiff's primary care provider Dr. Marie Desravines, MD "great weight," yet did not fully adopt her opinion "nor was such an

13

omission fully explained or accounted for." Dkt. No. 11 at 16. Plaintiff contends that Dr. Desravines opined that plaintiff could not perform jobs involving lifting, pushing, or pulling with her hands, "not just her right upper extremity." Id. at 17. Plaintiff references Dr. Desravines' opinion that plaintiff "would most likely start lifting with her left hand and subsequently develop problems with that wrist as well." Id. Plaintiff contends that this opinion "is not purely speculative, but rather Dr. Desravines' expert opinion on Plaintiff's limitations that stem from her right arm injury." Id. at 18. Plaintiff argues that "[t]his is another example of the ALJ improperly assessing medical evidence to form unsubstantiated determinations over the valid opinions of medical professionals." Id. at 18. Defendant argues that the ALJ properly assessed Dr. Desravines' opinion and the portion of the doctor's opinion relating to plaintiff's left hand use was properly rejected as speculative. Dkt. No. 14 at 9-10.

Insofar as plaintiff argues that the ALJ violated the treating physician rule by according great weight to Dr. Desravines' opinion, but rejecting as speculative her statement in a September 2012 treatment note relating to the potential future left hand problems, the Court disagrees. T at 19. The ALJ Is not required to agree with all portions of a medical provider's opinion in order to accord it great weight. The ALJ explicitly provided her rationale for rejecting that portion of Dr. Desravines' opinion. Id. at 18. She noted that treatment records did not document limitations on the use of the left upper extremity, and that plaintiff "testified that she was able to use her left upper extremity for activities and that she had adapted to using it." Id. Indeed, the ALJ reasonably concluded that Dr. Desravines' comment relating to potential left hand

14

issues was speculative. The record does not support any left hand limitations at the time relevant to the ALJ's assessment, as the ALJ notes in referencing "opinions from different examiners [that] are consistent in generally suggesting that the claimant can perform work tasks with her upper left extremity[.]" T at 19; see, e.g., Van Dien v. Barnhart, 04 Civ. 7259, 2006 WL 785281, at *9 (S.D.N.Y. Mar. 24, 2006) ("[The] general rule of deference does not apply where 'the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.'").

As defendant correctly notes, dkt. no. 14 at 10, in assessing plaintiff's RFC, the ALJ is to look at plaintiff's abilities and limitations prior to the date last insured, or before December 31. 2015. In rejecting this portion of Dr. Desravines' opinion, contrary to plaintiff's argument, the ALJ "comprehensively set forth [her] reasons for the weight assigned" to Dr. Desravines' opinion and provided "good reasons" for rejecting the portion of her treatment notes relating to potential left hand problems. Hallorhan v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004). As the ALJ's assessment of Dr. Desravines' opinion "affords an adequate basis for meaningful judicial review, [and] applies the proper legal standards, it is supported by substantial evidence such that additional analysis would be unnecessary or superfluous." Chichocki, 729 F.3d at 177. Accordingly, the Court does not find that the ALJ violated the treating physician rule, and plaintiff's argument on this point does not provide an independent basis for remand.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's Motion for Judgment on the Pleadings, Dkt. No. 11, is **GRANTED**; and it is further **ORDERED**, that defendant's Motion for Judgement on the Pleadings, Dkt. No. 14, is **DENIED**, and the matter is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for further proceedings consistent with this Memorandum-Decision & Order.

**IT IS SO ORDERED**.

Dated: March 7, 2019
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge